Filed 6/26/25  P. v. Kahn CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MUSTAQ ALI KAHN,<br><br>    Defendant and Appellant. | C101308<br><br>(Super. Ct. No. 96F07764)<br><br>MODIFICATION OF OPINION AND DENIAL OF PETITION FOR REHEARING; GRANT REQUEST FOR JUDICIAL NOTICE<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

Respondent filed a petition for rehearing and a request for judicial notice with this court.  It is hereby ordered that the petition for rehearing is denied and the request for judicial notice is granted.

1

It is also ordered that the opinion filed herein on June 16, 2025, be modified as follows:

1.  On page 2 in the first sentence of the first full paragraph under the heading **FACTS and PROCEEDINGS**, remove the words "which is the only source of the facts in the record on appeal." That sentence will now read:

> The following facts are taken from the probation report.

2.  Add footnote No. 1 after the aforementioned sentence on page 2 that reads "The following facts are taken from the probation report." The footnote will read:

> 1. The Attorney General was unable to locate a copy of this court's opinion on defendant's direct appeal. (*People v. Kahn* (Feb. 19, 1999, C027590) [nonpub. opn.].) He requested that we take judicial notice of that opinion, but we were also unable to locate a copy. After we issued the opinion in this case, the Attorney General filed a request for judicial notice of the prior opinion, which he had located. We grant that request. (Evid. Code, §§ 452, subd. (d); 459, subd. (a).) He also filed a concurrent petition for rehearing, the merits of which we will address in the Discussion, *post*.

3.  On page 3 near the end of the paragraph under the heading *Procedural History*, delete footnote No. 2.

4.  On page 9 after the first full paragraph under the heading IV *Analysis*, add the following two paragraphs:

> In his petition for rehearing, the Attorney General argues that our prior opinion on defendant's direct appeal (of which we have taken judicial notice) demonstrates that defendant was the sole perpetrator of the murder,

and therefore the actual killer. Relying on *People v. Guilford* (2014) 228 Cal.App.4th 651, the Attorney General argues that the prior opinion may be used to establish the facts surrounding the offense for purposes of determining defendant's eligibility for a *Franklin* hearing. *Guilford* observed that under the three strikes law generally, a trial court may look at the whole record--including a prior appellate opinion--to determine whether the facts of the case met the definition of a strike, and it concluded that the trial court properly considered the prior opinion to determine whether the defendant had intended to inflict great bodily injury, rendering him ineligible for relief under the Three Strikes Reform Act of 2012. (*Guilford*, at pp. 659-660.) *Guilford* added that to the extent the prior opinion constituted hearsay, reliable hearsay was sufficient to revoke probation or parole, proceedings that were analogous to those at issue in that case. (*Ibid.*)

We decline to determine in the first instance that defendant is necessarily ineligible for a *Franklin* hearing based only on the prior opinion, without the benefit the remainder of the record of conviction. As our Supreme Court has recently cautioned, while appellate opinions are generally considered to be part of the record of conviction, "the probative value of an appellate opinion is case-specific, and 'it is certainly correct that an appellate opinion might not supply all answers.' " (*People v. Lewis* (2021) 11 Cal.5th 952, 972.) On remand, the trial court will have the opportunity to review the prior opinion and the rest of the record of conviction to determine whether defendant is eligible for a *Franklin* hearing.

This modification does not change the judgment.

FOR THE COURT:


_____/s/_____
Hull, Acting P. J.



_____/s/_____
Robie, J.



_____/s/_____
Duarte, J.

Filed 6/2/25  P. v. Kahn CA3 (unmodified opinion)

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MUSTAQ ALI KAHN,<br><br>    Defendant and Appellant. | C101308<br><br>(Super. Ct. No. 96F07764) |

Defendant Mustaq Ali Kahn appeals the trial court's denial of his petition for an evidence preserving proceeding pursuant to *People v. Franklin* (2016) 63 Cal.4th 261. The trial court denied defendant's motion following our Supreme Court's decision in *People v. Hardin* (2024) 15 Cal.5th 834 (*Hardin II*).  Defendant contends an exception to the holding of *Hardin II* was stated in *People v. Briscoe* (2024) 105 Cal.App.5th 479 (*Briscoe*), which was decided after the court's denial of his motion, and he asks us to reverse the court's order in light of *Briscoe*.  We agree and reverse the court's order.  We

1

remand with directions to allow defendant the opportunity to demonstrate his eligibility for a *Franklin* hearing.

## FACTS AND PROCEEDINGS

*Factual Background*

The following facts are taken from the probation report, which is the only source of the facts in the record on appeal. "On September 27, 1996, the 24 year old victim did not appear at his job or contact his employer. When his brother, also his roommate, returned home that evening he found the victim's vehicle was gone from its parking spot at their apartment complex. Earlier in the day, the victim's family had become alarmed and telephoned the victim's brother when the victim had been reported absent from work. The victim's brother called the police to file a missing person's report.

"When officers arrived, the victim's brother and officers began checking the apartment for the victim's personal belongings. The victim's brother opened a closet door in the victim's bedroom where he saw a blanket spread out on the floor. When he pulled the blanket back, the victim's brother found the nude body of the victim, face down with his hands tied behind his back with a necktie. Another necktie was tightly wrapped around the victim's neck . . . . The victim's ankles were tied together with a long-sleeved T-shirt.

"On September 27, 1996, the defendant was stopped by the San Leandro Police Department for a vehicle code violation. The defendant, who had no driver's license, was recognized as being wanted for the charges of kidnap, assault with intent to commit rape, false imprisonment and sexual battery . . . . He was transported to the Hayward Jail, where he was found to be in possession of the victim's VISA and Master Card charge cards. A check with the credit card companies revealed they had not been reported stolen at that time. The defendant indicated 'a friend let me use those' . . . . The vehicle the defendant was driving, which he stated a friend had given him to use, was subsequently discovered to be the victim's.

2

"On September 28, 1996, the defendant was transported to the Sacramento County Jail where, during an initial interview, he stated he had met a 'black fellow' at the 7[-]Eleven and that subject had taken him to Fairfield, gotten out of the car and left the car with the defendant. The defendant stated he had found the victim's credit cards in the car and put them in his pocket. Eventually, the defendant admitted to the offense. He had been living in the same apartment complex as the victim, where he had been attempting to get someone to drive him to San Leandro to see his wife. He went to the victim's apartment where, after being allowed entry, he asked the victim for a ride to Oakland. When the victim declined to give him a ride, the defendant committed the offense. During the preliminary hearing, the defendant recanted, stating he had been tortured and coerced into making the confession."

*Procedural History*

A jury found defendant guilty of first degree murder (Pen. Code, § 187, subd. (a))[1] and robbery (§ 211) and found true the special circumstance allegation that the murder occurred while defendant was engaged in the commission of robbery (§ 190.2, subd. (a)(17)). The trial court sentenced defendant to life in prison without parole (LWOP) for murder, and four years for robbery, stayed pursuant to section 654. Defendant appealed his original conviction, and a different panel of this court affirmed, as relevant here, the murder conviction and special circumstance finding.[2] (*People v. Kahn* (Feb. 19, 1999, C027590) [nonpub. opn.].)

In 2023, defendant filed a motion for a *Franklin* hearing to preserve mitigating evidence tied to his youth under the authority of *People v. Hardin* (2022) 84 Cal.App.5th

---

[1] Further undesignated statutory references are to the Penal Code.

[2] The Attorney General notes that he was unable to locate a copy of this court's opinion in defendant's direct appeal and requests that we take judicial notice of that opinion. However, like the Attorney General, we have not been able to locate a copy of the opinion.

273 (*Hardin I*), reversed in 2024 by *Hardin II*. At the time, *Hardin I* allowed youth offenders who were sentenced to LWOP to preserve evidence that may be used for a later youth offender parole hearing pursuant to section 3051. (*Hardin I*, at pp. 290-291.) Defendant's motion alleged that he was between the ages of 18 and 25 when he committed the underlying offense, and the denial of youthful parole consideration for those who committed such crimes between those ages and received an LWOP sentence, while those who received a de facto LWOP during the same age range were considered for youthful parole, violated equal protection.

On March 4, 2024, our Supreme Court decided *Hardin II*, *supra*, 15 Cal.5th at page 834. The court in *Hardin II* concluded, "[w]ithout foreclosing the possibility of other as-applied challenges to the statute," that section 3051's exclusion of youth LWOP offenders does not violate equal protection, "either on its face or as applied to [those] serving [LWOP] sentences for special circumstance murder" generally. (*Hardin II,* at p. 839.)

On May 7, 2024, the trial court denied defendant's motion on the basis that his requested relief was foreclosed by *Hardin II*. No facts were presented in the motion, and the court did not cite any facts when denying the motion.

Defendant timely filed a notice of appeal. The case was fully briefed in March 2025 and was assigned to the current panel later that month.

## DISCUSSION

"[S]ection 3051 grants certain youth offenders convicted of a controlling offense committed before the age of 26 an opportunity to seek parole. The statute excludes those sentenced to life without parole who were over 18 when they offended. (§ 3051, subd. (h).)" (*Briscoe*, *supra*, 105 Cal.App.5th at p. 484, fn. omitted.) The purpose of a *Franklin* hearing is to provide defendants eligible for a youth offender parole hearing an opportunity to put on the record closer in time to the offense " 'the kinds of information that sections 3051 and 4801 deem relevant at a youth offender parole hearing.' " (*In re*

4

*Cook* (2019) 7 Cal.5th 439, 446.) Accordingly, a defendant's entitlement to a *Franklin* hearing depends on their entitlement to a youth offender parole hearing under section 3051. Here, defendant requests that we remand the matter to the trial court for the purpose of providing him with the opportunity to demonstrate that he is entitled to a *Franklin* hearing. As we will explain, because the record does not conclusively demonstrate that defendant is *not* entitled to a *Franklin* hearing, we will remand for the trial court to provide defendant with the opportunity to establish his eligibility for such a hearing.

I

*Special Circumstance Felony-Murder*

We begin with a brief overview of special circumstance felony-murder. Under the felony-murder doctrine in effect at the time of defendant's trial, a defendant could be found guilty of murder without any showing of an intent to kill or implied malice if the defendant or an accomplice killed someone during the commission, or attempted commission, of an inherently dangerous felony. (*People v. Strong* (2022) 13 Cal.5th 698, 704.) Murder occurring during certain serious or violent felonies were of the first degree, while others were of the second degree. (*Ibid.*) A defendant convicted of first degree murder could be sentenced to LWOP if the jury found that the murder's commission involved one of several statutorily defined special circumstances, including, as relevant here, felony murder. (*Ibid.*; § 190.2, subd. (a)(17).) The felony-murder special circumstance applied to murders committed in the course of robbery, among other serious felonies. (*Strong*, at p. 704; § 190.2, subd. (a)(17).) "Like the other special circumstances, the felony-murder special circumstance applies to defendants who actually killed ([§ 190.2], subd. (b)) or who abetted a murder with the intent to kill (*id.*, subd. (c)). But unlike the other special circumstances, the felony-murder special circumstance also applies to some convicted murderers who neither killed nor intended to

5

kill, namely, 'major participant[s]' in the underlying felony who acted 'with reckless indifference to human life.'  (*Id.*, subd. (d).)"  (*Strong*, at p. 704.)

In *People v. Banks* (2015) 61 Cal.4th 788 and *People v. Clark* (2016) 63 Cal.4th 522, our Supreme Court "clarified the meaning of the special circumstances statute."  (*In re Scoggins* (2020) 9 Cal.5th 667, 671.)  *Banks* held that a "major participant" in a robbery is someone whose "personal involvement" is "substantial" and "greater than the actions of an ordinary aider and abettor" (*Banks*, at pp. 800-801), and *Clark* clarified that " 'reckless indifference,' . . . encompasses a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the defendant does not specifically desire that death as the outcome of his actions" (*Clark*, at p. 617).

II

Hardin I *and* II

In *Hardin I*, the appellate court concluded section 3051 violated equal protection because it allowed youthful offenders who were not sentenced to LWOP to seek youthful parole but prohibited those sentenced to LWOP from seeking that relief.  (*Hardin I*, *supra*, 84 Cal.App.5th at p. 291.)

In *Hardin II*, our Supreme Court reversed *Hardin I* and held:  "Without foreclosing the possibility of other as-applied challenges to the statute, we conclude that [the defendant] has not demonstrated that . . . section 3051's exclusion of young adult offenders sentenced to [LWOP] is constitutionally invalid under a rational basis standard, either on its face or as applied to [the defendant] and other individuals who are serving [LWOP] sentences for special circumstance murder.  Under California law, special circumstance murder is a uniquely serious offense, punishable only by death or [LWOP].  When it was considering whether to expand the youth offender parole system to include not only juvenile offenders but also certain young adults, the Legislature could rationally balance the seriousness of the offender's crimes against the capacity of all young adults for growth, and determine that young adults who have committed certain very serious

6

crimes should remain ineligible for release from prison. [The defendant] has not demonstrated that the Legislature acted irrationally in declining to grant the possibility of parole to young adult offenders convicted of special circumstance murder, even as it has granted youth offender hearings to young adults convicted of other offenses." (*Hardin II*, *supra*, 15 Cal.5th at p. 839.)

## III

## Briscoe

After the trial court denied defendant's motion based on *Hardin II*, the First Appellate District issued *Briscoe*, in which the defendant raised an equal protection challenge to section 3051's inclusion of youth offenders convicted of first degree felony murder under section 189, subdivision (e)(3) while excluding those sentenced for felony-murder special circumstance murder under section 190.2, subdivision (d). (*Briscoe*, *supra*, 105 Cal.App.5th at pp. 489-490.) The appellate court agreed with the challenge.

As we set forth *ante*, section 190.2, subdivision (d) provides that a jury may find a special circumstance true (resulting in an LWOP sentence) where a defendant is not the actual killer but who "with reckless indifference to human life and as a major participant, aids, abets, counsels, commands, induces, solicits, requests, or assists in the commission of" one of the felonies enumerated in section 190.2, subdivision (a). Under section 189, subdivision (e)(3), an accomplice to a felony murder is guilty of murder if he was "a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of [s]ection 190.2." The court in *Briscoe* observed that both sections 190.2, subdivision (d) and 189, subdivision (e)(3) "now require a person who is not the actual killer or did not have the intent to kill to be a major participant in the underlying felony and act with reckless indifference to human life." (*Briscoe*, at p. 489.) The court concluded that because section 190.2, subdivision (d) "describes the exact same circumstances and conduct that is now necessary to support a conviction for first degree felony murder under section 189, subdivision (e)(3)," the

7

disparate treatment of offenders who committed murder per these identical provisions during the same underlying felonies cannot reflect any difference in culpability. (*Briscoe*, at p. 492.) Accordingly, excluding accomplices who did not actually kill the victim from youth offender parole hearings because they have a section 190.2 special circumstance finding, while allowing defendants who have a conviction solely under section 189, subdivision (e)(3) to seek that relief, violates equal protection on an as-applied basis. (*Briscoe*, at p. 494.)

The *Briscoe* court acknowledged that a felony-murder conviction and special circumstances felony-murder conviction for the actual killer presented a different question of culpability. The Attorney General had argued that there was a rational basis for the distinction the defendant challenged in that case because felony-murder special circumstance requires " 'an independent or concurrent felonious purpose distinct from any intent to kill.' " (*Briscoe*, *supra*, 105 Cal.App.5th at p. 494.) The court observed: "The felony-murder offense 'is established merely upon a showing that the defendant killed during the commission or attempted commission of the felony.' [Citation.] With respect to the felony-murder special circumstance, courts have fashioned the independent felonious purpose rule so that the special circumstance 'applies "when the murder occurs during the commission of the felony, not when the felony occurs during the commission of a murder." ' [Citation.] In other words, '[i]f the defendant committed the felony for the sole purpose of effectuating the killing,' the special circumstance does not apply." (*Ibid.*) The court concluded that rule had no application in that case, where the defendant was neither the actual killer nor acted with an intent to kill. (*Ibid.*)

## IV

### *Analysis*

The Attorney General argues that remand is not required because *Briscoe* is distinguishable on the basis that the special circumstance finding in *Briscoe* was made under section 190.2, subdivision (d), whereas here the finding was made under section 190.2, subdivision (a)(17)(A), which he contends required the jury to find that defendant was either the actual killer or an accomplice. We disagree. As we have discussed, a special circumstance finding under section 190.2, subdivision (a)(17) can be made on the basis that the defendant was the actual perpetrator (*id.*, subd. (b)), an aider and abettor (*id.*, subd. (c)), or a major participant who acted with reckless indifference to human life (*id.*, subd. (d)). Thus, we cannot conclude that defendant was the actual killer or that he acted with intent to kill solely on the basis that the jury found the special circumstance true under section 190.2, subdivision (a)(17).

The Attorney General further argues that the probation report, upon which both parties rely to provide the facts of the case, demonstrates that defendant was the sole perpetrator. We decline to deprive defendant of the opportunity to present evidence at a hearing on remand purely on the basis of the probation report, which " 'ordinarily is not part of the record of conviction.' " (*People v. Soto* (2018) 23 Cal.App.5th 813, 816, fn. 2.) While the probation report does not indicate that anyone else was involved in defendant's crime, the report does not foreclose such a possibility. Accordingly, we will remand the matter to allow defendant to present evidence that he is entitled to a *Franklin* hearing. We express no opinion as to what the trial court's decision should ultimately be in that regard.

## DISPOSITION

The order denying defendant's request for a *Franklin* hearing is reversed, and the matter is remanded for further proceedings consistent with this opinion.

_____/s/_____

Duarte, J.

We concur:

_____/s/_____

Hull, Acting P. J.

_____/s/_____

Robie, J.